UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff                              Case No. 15-20652

    v.                                      Hon. GEORGE CARAM STEEH

D-1    BILLY ARNOLD,

        Defendant.

_____/

### GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION TO SUPPRESS FACEBOOK EVIDENCE [582]

NOW COMES the United States, by and through its attorneys, Justin Wechsler, Trial Attorney, Department of Justice, and Daniel L. Lemisch, Acting United States Attorney, and respectfully requests that the Court deny defendant Arnold's motion to suppress, Docket Entry (DE) 582, on each ground stated in the defendant's motion.[1]

### I.    INTRODUCTION

The Court should deny the defendant's motion to suppress evidence obtained as a result of a search of his Facebook account. First, the warrant was based on probable cause as evidenced by the attached search warrant application and Border Patrol Agent

---

[1] Without including any additional arguments or facts, Devon Patterson (D-10) filed a Notice of Joinder to the defendant's motion to suppress. *See* DE 604.

1

Shawn Horvath's Affidavit. *See* Exhibit 1 – Search Warrant; Exhibit 2 – Application; and Exhibit 3 – Affidavit. Second, Agent Horvath acted in reasonable, good-faith reliance on the search warrant. Finally, Agent Horvath signed the Affidavit in compliance with the Fourth Amendment's oath or affirmation requirement. *See* Exhibit 4 – Signature Page of Affidavit.

### A. Procedural History

On December 15, 2016, a grand jury in the Eastern District of Michigan indicted 19 individuals, including the defendant, on a Fourth Superseding Indictment. *See* DE 440, Fourth Superseding Indictment (hereinafter the Indictment). The Indictment charges the defendants with numerous crimes in connection with their association with the criminal enterprise Seven Mile Bloods (SMB).[2] *Id.* Count One charges 18 individuals, including defendant Arnold, with conspiring to conduct and participate in the affairs of the SMB enterprise, through a pattern of racketeering activity, in violation of Title 18, United States Code, Section 1962(d) ("RICO conspiracy").[3] *Id.* at 8-9. Count One alleges that SMB, including its leadership, members, and associates

---

[2] The Indictment includes counts charging multiple defendants with Title 18 United States Code, Section 1962(d), 1959(a)(1), 1959(a)(3), 1959(a)(5), 924(c), 922(g)(1), and 2.

[3] Specifically, Count One states that the defendant and others: "did knowingly, willfully and unlawfully combine, conspire, confederate, and agree with one another to violate Title 18 United States Code, Section 1962(c); that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of [SMB] through a pattern of racketeering activity." *See* DE 440 at 9.

constituted an enterprise, as defined by Title 18, United States Code, Section 1961(4). *See Id.* at 6. Count One further alleges that this pattern of racketeering activity consisted of multiple threats and acts involving robbery and murder, in violation of Michigan laws, and offenses involving conspiracy to distribute and distribution of controlled substances, and witness intimidation, which are indictable under federal law.[4] *Id.*

In terms of the defendant, the Indictment is replete with examples of the defendant's racketeering activity in furtherance of the conspiracy and on behalf of SMB. *See, e.g., Id.* at 12-15, 18. For example, the Indictment describes the defendant's involvement in multiple murders and attempted murders. *Id.* at 28-31. It also describes the defendant's involvement in multiple narcotics transactions. *See e.g., id.* at 12-14.

On July 31, 2017, the defendant filed a motion to suppress evidence from his Facebook account, which the government collected. *See* DE 582. The defendant alleges that the Facebook search warrant was not based upon probable cause and the Affidavit supporting the warrant was unsworn. Both claims are incorrect, and the Court should reject them.

B. **Factual Background**

Beginning in at least October 2011, the Federal Bureau of Investigation (FBI) and the Detroit Police Department (DPD) have been conducting a criminal investigation into SMB and its members. Investigators found evidence that the

---

[4] Count One states that all of these offenses constitute a pattern of racketeering activity, as defined in Title 18, United States Code, Section 1961(1) and (5). *Id.*

defendant joined the gang in approximately 2004 - 2005 and has since agreed to commit, and has committed, a series of overt acts in support of SMB's objectives in the areas of Detroit, Michigan and Charleston, West Virginia. These acts included promoting the criminal enterprise on social media, selling controlled substances in support of SMB, murdering a rival gang member, and attempting to kill other rival gang members.

On November 12, 2015, the magistrate judge issued a search warrant for records of numerous Facebook accounts, including the defendant's (Account 29), for evidence of the SMB members' participation in the RICO conspiracy and the other listed charges. *See* Exhibit 1. Specifically, the warrant authorized the government's seizure of Facebook account information "that constitutes fruits, evidence, and instrumentalities of violations of Title 18, United States Code, Section 1962 (Racketeering Influenced Corrupt Organizations Act), Title 18, United States Code, Section 1959 (Violent Crimes in Aid of Racketeering); Title 18, United States Code, Section 922(g) (Felon in Possession of Firearm); Title 18, United States Code, Section 924(g) (Use of Firearm in Furtherance of a Crime of Violence); Title 21, United States Code, Section 841, 844, and 846 (distribution, possession, and conspiracy to distribute controlled substances)." *See* Exhibit 1, Attachment B..

FBI Violent Gang Task Force (FBI VGTF) Agent Shawn Horvath served the warrant, and Facebook subsequently produced the evidence requested. The production contained, among other things, pictures of the defendant involved in SMB activity and evidence relevant to the prosecution of the RICO conspiracy.

4

## II.   ARGUMENT

### A.   The affidavit established probable cause.

A search warrant is valid if probable cause existed to support its issuance. *See e.g., Mays v. City of Dayton*, 134 F.3d 809, 813 (6th Cir. 1998). An affidavit supported by probable cause will state facts showing a fair probability that evidence of a crime will be found in the place to be searched. *See United States v. Hanna*, 661 F.3d 271, 285 (6th Cir. 2011) (citations omitted). The belief that the items sought will be found at the location to be searched must be supported by more than mere suspicion, but does not require prima facie proof. *United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003) (citation omitted). The probable cause standard is based on "factual and practical considerations of everyday life," not "legal technicalities." *United States v. Terry*, 522 F.3d 645, 648 (6th Cir. 2008); *accord United States v. Wolfe*, 22 F. Supp. 2d 627, 639 (E.D. Mich. 1998).

The standard for reviewing a judicial officer's determination is well-established. "[R]eviewing courts are to accord the magistrate's [probable cause] determination great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc) (internal quotations and citation omitted). Once a magistrate has determined the existence of probable cause, that decision should only be reversed if it was arbitrarily made. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). This deferential standard "further[s] the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984). Furthermore, the Supreme

5

Court has counseled that, in close calls, warrants should be upheld because it will have the effect of encouraging law enforcement officers to seek warrants. *Illinois v. Gates*, 462 U.S. 213, 237 n.10 (1983).

In this case, the facts set forth in the Affidavit clearly evidence that there was a "fair probability" that a search of the defendant's Facebook records would, at the very least, provide evidence of the defendant's membership and willing participation in SMB and of conspirators' predicate offenses. Agent Horvath began the Affidavit by setting forth a summary of his education, training, and experience in areas including gang investigations, narcotics violations, and violent criminal acts. *See* Exhibit 3 at 4–7. He also detailed his deep involvement in the investigation into the SMB enterprise. *Id.* at 5–7.

Agent Horvath then explained why there was a fair probability evidence of criminality would be found. He averred that the evidence gathered from interviews, police reports, and other sources reveal that SMB is a criminal enterprise, as defined by Title 18, United States Code, Section 1961(4) and 1959(b)(2), and engaged in conspiracies to commit federal and state criminal offenses, including violent ones. *Id.* at 5–9. He continued that SMB is a "close-knit" group and it is not uncommon for many of the members to be involved in related acts of violence, or for a violent cartel's members to plan criminal activity together. *Id.* at 5–6. Agent Horvath explained that SMB derives its income from the sale of illegal narcotics, robberies, and a variety of other criminal methods. *Id.* at 9.

The FBI and DPD developed the evidence through the interview of "multiple individuals, including victims, cooperating witnesses involved or associated with [SMB], and witnesses to the criminal activities of [SMB]." *Id.* at 11. Agent Horvath averred that the evidence details conspiracies to commit predicate acts such as murder, attempted murder, armed robbery, narcotics trafficking, and witness intimidation. *Id.* Agent Horvath specified that he was assisted by "multiple sources of information that have provided the FBI with information regarding . . . [the] detailed structure of membership of various criminal enterprises, especially the Seven Mile Bloods," and that "[a]ll of the information provided by these sources . . . which has been investigated, was found to be true, and therefore reliable and credible." *Id.* at 16. Agent Horvath stated that certain Facebook accounts, including Account 29, had been identified to be members or associates of SMB. *Id.*

Agent Horvath then explained why there was a fair probability that evidence of criminality, particularly evidence a racketeering enterprise and racketeering activity, would be found within records of the Facebook accounts included in the warrant, and specifically Account 29, the account belonging to the defendant. He began by stating that, based on his experience and investigation, "[s]ocial media outlets are used as a means by some gang members to take credit for violent incidents, communicate with one another about their criminal behavior, and promote the gang"; that "gang members will post [photographs containing evidence of criminal activity] on social media sites to inform others about their criminal activities"; that "most [gang] members are known by

7

street names or monikers to their fellow gang members" and "these monikers are often used as, or incorporated into, the accounts and user names of social media sites used by gang members." *Id.* at 6-7. He then buttressed his training and experience concerning gang members' usage of social media with his on-going investigation into the SMB. Agent Horvath identified that "[l]aw enforcement officers have observed the social media accounts, including Facebook accounts, of numerous identified members of the Seven Mile Bloods gang" and that review had uncovered "[SMB] members are utilizing their cell phones to post photos and videos to their accounts depicting gang names colors, and hand signs, memorials to dead gang members, organization and structure of their gang, and criminal activity." *See id.* at 12. He then cited to searches of SMB members' cell phones, pursuant to a search warrant, including phones of the defendant's, that showed they "were being utilized for the purpose of posting pictures and communications regarding criminal acts on social media, including Facebook," *see id.* at 14-15, ¶ 25-27; and that SMB members in particular "use various social media networks to monitor, track, and communicate in furtherance of [SMB]." *See id.* at 11.

Agent Horvath also narrowed his focus specifically to the defendant on pages 33-34 of his affidavit. He again cites to the search warrant obtained in October 2015 for four cell phones recovered during the defendant's arrest, which were determined to have been used to upload pictures of weapons and post gang-related material to Facebook. *Id.* at 33–34. The Affidavit also stated that Account 29 displayed a picture of the defendant in which he wears a red and black shirt with the SMB phrase "55" on

8

the front. *Id.* Earlier in the Affidavit, Agent Horvath had noted that SMB is divided into sects, one of which is named "55," and members of SMB wear red clothing to symbolize their gang affiliation. *Id.* at 10.

These facts reasonably suggested that the defendant was an active member of SMB, promotes the enterprise and its objectives, and uses Facebook to do so. Coupled with Agent Horvath's description of the organization and its use of social media, there were sufficient facts to establish more than a fair probability that evidence that could be used to establish the existence of an enterprise for RICO conspiracy purposes, the enterprise's racketeering activities (and those of the defendant himself), and other violations of the listed statutes could be found in his Facebook account. As Agent Horvath averred, that evidence might have included communications among conspirators planning or discussing criminal conduct, pictures or posts taking credit for criminal acts, and pictures or posts advancing SMB's objectives. *See id.* at 5–11. "The issuing judge or magistrate may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996) (citations and internal quotation marks omitted).

Moreover, there were correlations between Account 29 and at least nine other Facebook accounts belonging to SMB conspirators. Agent Horvath's affidavit

9

proffered facts on each of these accounts and the fact the defendant communicated with them makes it even more likely that Account 29 would contain evidence of the RICO conspiracy and the other listed offenses. For example, the defendant has a similar social media correlation with Account 8 ("Hardwork Rookie Squad"), which had posted rap videos glorifying SMB criminal behavior and taunting rival gangs. *Id.* at 21. Certainly, it was not the case that the magistrate judge arbitrarily found probable cause. *See Coffee*, 434 F.3d at 892.

The defendant takes issue with the fact that Agent Horvath makes "no allegation that anything posted in Account 29 is illegal." DE 581 at 5. But, an affidavit and its proffered facts need not themselves prove illegal activity. *See Hanna*, 661 F.3d at 285. The defendant relies heavily on the unpublished opinion *United States v. Behtal*, 245 F. App'x 460 (6th Cir. 2007). In that case, the Court found that a search warrant affidavit did not establish probable cause to search a defendant's residence for drugs or weapons simply because the defendant lived there. *Id.* at 468–69 ("In this case, the affidavit only contained information connecting the [defendant] to two shootings; it did not include any facts connecting him to drugs or to weapons at his home other than his alleged status as a gang member and known acquaintance of [others] who reportedly kept drugs and guns in *their* residence"). The *Bethal* court was concerned that there was no rationale for why evidence of criminal activity (drugs and guns) would be found at the defendant's home. Unlike *Bethal*, and as detailed above, the Affidavit in this case thoroughly laid out the multiple reasons there was more than a fair probability evidence

10

of the racketeering enterprise and the other listed offenses would be found on Account 29. The defendant also repeats the proposition stated in a footnote in *Bethal* that, "neither a suspect's membership in a gang nor his retention of a weapon in his home, constitutes, ipso facto, criminal activity." *Id.* at 468 fn. 7. However, the defendant fails to connect that proposition to the warrant in the instant racketeering case. The government does not contend that the defendant's status as a gang member alone is an illegal activity. Rather, the defendant's overt actions in furtherance of SMB's goals, the organization's use of Facebook to communicate and display criminal activity, and other facts described above establish probable cause.

### B. Reliance on the warrant was objectively reasonable.

Assuming *arguendo* that the Affidavit failed to establish probable cause, the Fourth Amendment exclusionary rule does not bar the admission of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a neutral magistrate that was ultimately found to be invalid. *United States v. Leon*, 468 U.S. 897, 926 (1984). Under the *Leon* objective "good faith" test, an officer is entitled to rely on a magistrate's probable cause determination, unless the magistrate wholly abandoned his judicial role in that the "affidavit is so lacking in indicia of probable cause" or that the warrant is "so facially deficient" that the executing officers "cannot reasonably presume it to be valid." *United States v. Gholston*, 993 F. Supp. 2d 704, 720 (E.D. Mich. 2014).

Furthermore, the Supreme Court has recently held that lower courts determining whether to exclude evidence should use a cost-benefit analysis focused on the flagrancy of police misconduct. *Davis v. United States*, 564 U.S. 229, 238 (2011); *Herring v. United States,* 555 U.S. 135, 147 (2009) ("deterrent effect of suppression must be substantial and outweigh any harm to the justice system"); *United States v. Kinison*, 710 F.3d 678, 685 (6th Cir. 2013). Evidence should be excluded as "a last resort." *Id.* Evidence should not be excluded "to deter police misconduct unless the officers engage in deliberate, reckless, or grossly negligent conduct." *United States v. Master*, 614 F.3d 236, 243 (6th Cir. 2010) (citation and internal quotations omitted); *see also United States v. Powell*, 847 F.3d 760, 772 (6th Cir. 2017) ("Because the extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct, the cost-benefit analysis should focus on the 'flagrancy of the police misconduct' and on whether the police misconduct was 'deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence'").

Even if this Court held that probable cause was lacking, the evidence seized in the instant case should not be suppressed. The agent prepared a 51-page affidavit that thoroughly described his training and experience in the investigation of the SMB enterprise, explained how that enterprise utilized Facebook to coordinate and boast about its criminal activity, and set forth evidence to link the defendant and his fellow SMB members, Facebook users, to the enterprise and actions taken on its behalf. The search warrant application was not so lacking in indicia of probable cause as to render

12

reliance on the warrant entirely unreasonable. A neutral and detached magistrate judge reviewed and signed the detailed warrant application. The reliance and subsequent execution of the warrant was reasonable. Therefore, the good faith exception to the exclusionary rule should apply and the information seized should be admissible.

Moreover, Agent Horvath did not engage in the type of "deliberate, reckless, or grossly negligent conduct" that the courts have found warranted suppression of evidence. He acted in the exact manner courts have counseled investigators to act when seeking the ability to search for and to seize evidence – he sought a warrant from a neutral and detached magistrate. There is simply no misconduct to deter. On the other side of the balance, during the upcoming trial, the government will have to prove the existence of an association-in-fact enterprise as an element of the offense charged in Count One, which requires proof of "a continuing unit that functions with a common purpose." *Boyle v. United States,* 556 U.S. 938, 948 (2009). While oftentimes the proof establishing the existence of the enterprise and the racketeering activity itself can "coalesce" and become one and the same, *Id.,* 556 U.S. at 947, 951 ("a pattern of racketeering activity may be sufficient in a particular case to permit a jury to infer the existence of an association-in-fact [enterprise]"); *see also Ouwinga v. Benistar 419 Plan Services, Inc.,* 694 F.3d 783, 794 (6th Cir. 2012), the fact that the defendant posted photographs of himself wearing gang clothing or posted statements that acknowledge the existence of, and his involvement with the Seven Mile Bloods, their various monikers such as "55," or statements referring to fellow coconspirators by their gang

13

can be used by the government to demonstrate that this enterprise exists and does not have to rely on the argument that the enterprise can be "inferred" from the pattern of racketeering activity.

### C. The search warrant affidavit was provided under oath or affirmation.

The defendant alleges that the fruits of the search warrant should be suppressed because Agent Horvath did not sign the Affidavit supporting the warrant Application in front of the magistrate judge and thereby violated the Fourth Amendment's Oath or Affirmation requirement. However, as shown in Exhibit 4, Agent Horvath did in fact sign the Affidavit before the magistrate.[5] The affidavit provided to the defendant in discovery was redacted and did not include the agent's signature. *See* Exhibit 3. Attached is a true copy of the original signature page of the affidavit. *See* Exhibit 4. The defendant's claim should be denied.

---

[5] Only the signature page is included because it was copied from an unredacted copy of the affidavit that was sealed with the Court.

### III.   CONCLUSION

Based on the forgoing, the Government respectfully requests that the Court deny the defendant's motion to suppress evidence seized from his Facebook account in its entirety.

Respectfully submitted,

Daniel L. Lamisch
Acting United States Attorney


/s/ Justin Wechsler
JUSTIN WECHSLER
Trial Attorney
Department of Justice
450 5th Street NW
Washington, DC 20530
Telephone: (202) 598-8820
justin.wechsler@usdoj.gov


DATED:     August 15, 2017

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on August 15, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, for uploading and service by electronic notice to counsel and parties authorized to receive electronically Notices of Electronic Filing.

                                       /s/ Justin Wechsler
                                       Justin Wechsler
                                       Trial Attorney