UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

Case No. 15-20652-01

HON. GEORGE CARAM STEEH

BILLY ARNOLD,

Defendant.
______________________________/

**OPINION AND ORDER DENYING DEFENDANT**
**BILLY ARNOLD'S MOTION TO SUPPRESS [DOC. 583]**

This matter is before the court on defendant Billy Arnold's motion to suppress all items seized without a warrant following his arrest on September 26, 2015, and for the entry of an Order suppressing all data and information acquired from the seizure and search of six cellular telephones based on a search warrant later obtained. The court held oral argument on the motion on August 31, 2017. For the reasons stated in this order, defendant's motion to suppress is DENIED.

I. Facts

In September 2015, the FBI was investigating the Seven Mile Bloods (SMB) street gang for a variety of crimes, including racketeering, murder, non-fatal shootings, weapon possession and narcotics distribution. The

FBI became aware that several SMB members were planning to attend a party on September 25, 2015 for one of their deceased members, Devon McClure, who had been murdered on May 1, 2015. The party was held at the Crazy Horse Adult Entertainment Club in Detroit.

The FBI, Michigan State Police and Detroit Police Department set up surveillance on the club to identify SMB members, to identify vehicles they were driving, and to arrest any individuals who may have outstanding arrest warrants. Slightly before midnight, law enforcement witnessed defendant Arnold and co-defendant Steven Arthur arrive together in a blue 2002 Chevy Trailblazer. Law enforcement entered the license plate number into its database and the vehicle came back as reported stolen in Detroit on September 6, 2015. The FBI case agent alerted all of the surveillance teams about the stolen vehicle and it was decided to attempt to stop the vehicle for further investigation when it left the parking lot. Arthur and Arnold left the club together in the early morning of September 26, 2015, with Arthur driving and Arnold in the front passenger seat.

A marked Detroit Police patrol car activated its lights to alert the individuals in the Trailblazer of its intent to pull the vehicle over. Instead, Arthur sped up and led the officers on a high speed chase at speeds exceeding 100 miles per hour on I-94 in Detroit. The chase ended when the Trailblazer exited from I-94 onto I-75. Arthur lost control of the vehicle

and it ran up the embankment of the exit's curve. Both tires on the left side of the vehicle were deflated and the Trailblazer stopped on the slope above the road.

Arthur ran from the vehicle and was caught after a short foot chase. Arnold remained in the Trailblazer until ordered out of the vehicle by Detroit Police Officer Nick Dedeluk. Arnold was put on the ground and handcuffed. Detroit Police officer, Sergeant Craig Schrameck, approached the Trailblazer and began to search the Trailblazer. Upon lifting the tailgate, Sergeant Schrameck found an AR-15 rifle. Because Arnold and Arthur were known to be previously convicted felons, the weapon was turned over to the FBI for federal prosecution. FBI Task Force officer Jeremy McCullough then collected several cell phones within the Trailblazer. There is a dash cam video of the chase, stop and seizure.

The Trailblazer was removed from the highway and impounded. The FBI obtained a signed consent from the vehicle's owner to search the vehicle on October 5, 2015.

## II. Argument

### A. Probable Cause to Stop Trailblazer

The government admits that as a passenger in the vehicle, Arnold has standing to challenge the stop and detention and can argue that the

evidence should be suppressed as fruits of illegal activity. A warrantless arrest of an individual for a felony or misdemeanor committed in an officer's presence in a public place is constitutional only if supported by probable cause. *Maryland v. Pringle*, 540 U.S. 366 (2003) (citation omitted). An officer may arrest an individual if the officer has probable cause to believe the person has committed or is committing a felony based on the totality of the circumstances. *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996).

Defendant Arnold argues that the police lacked probable cause to arrest him for being in possession of a stolen motor vehicle. Probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).

In this case, the officers ran a LIEN report on the Trailblazer's license plate when the vehicle arrived at the Crazy Horse. Based on the information in the report, they knew the vehicle had been reported stolen as of September 6, 2015 and remained in that status through September 25 or 26, 2015. This information alone provided probable cause to stop the Trailblazer in order to investigate a felony – possession of a stolen motor vehicle. *See* M.C.L.A. § 750.535. The fact that the Trailblazer turned out

not to have been stolen on the date of the traffic stop is not material when the police are reasonable in believing that the car was stolen.

As soon as the Detroit Police attempted to pull the Trailblazer over, Arthur sped up and led the numerous law enforcement units on a high speed chase, going over 100 miles per hour on I-94. This action gave law enforcement probable cause to stop the Trailblazer for both traffic violations and felony offenses occurring right in front of them. *See* M.C.L.A. §§ 257.626 (reckless driving); 257.602a (failure to stop at signal of police / fourth degree fleeing and eluding); 257.627 (violations of basic speed law).

Arnold argues that the police lacked any objective reason to suspect that he had any knowledge that the vehicle had been reported stolen. Arnold bases this argument on the fact that the vehicle did not have any visible signs that it had been stolen, and that he did not attempt to flee and fully cooperated with the police. However, the question is not whether Arnold would have eventually been exonerated of the charge of possessing stolen property, but rather whether the arresting officers had probable cause to stop and subsequently detain both occupants of the vehicle based on the facts known to them at the time of the stop and arrest: that the car was reported as stolen, the high-speed chase ensued, and the high probability that the vehicle's occupants were gang members as they were seen arriving and leaving the memorial party for a deceased gang member.

Under the circumstances of this case, the officers did have probable cause to arrest defendant Arnold at the time of the traffic stop for possession of a stolen vehicle, as well as for fleeing or eluding.

Even if the officers did not have probable cause to arrest Arnold at the time of the traffic stop for possession of a stolen vehicle or for fleeing and eluding, officers making a traffic stop may ensure safety by ordering passengers to get out of the car and conducting pat-down searches upon reasonable suspicion that the passenger may be armed and dangerous. *United States v. Campbell*, 549 F.3d 364, 372 (6th Cir. 2008) (citation omitted). Such a detention cannot last longer than necessary to carry out the purpose of the stop. *Id*. In this case, Arnold was taken out of the vehicle and detained at the 4:30 minute mark of the dash cam video. Officers began to search the vehicle and uncovered the AR-15 rifle at the 10:00 minute mark. Therefore, if Arnold's status is evaluated as a detention rather than an arrest, he was only detained five and a half minutes before the officers' discovery, which turned the situation into a probable cause arrest of defendant as a felon in possession of a firearm.

B. Warrantless Search of Vehicle

Once a court finds that the defendant's Fourth Amendment protections were not violated in terms of the stop or arrest/detention, the defendant must establish standing to challenge a warrantless search and

seizure of property from a stolen car. Courts have held that the driver of a stolen vehicle has no reasonable expectation of privacy in that vehicle. *United States v. Hensel*, 672 F.2d 578, 579 (6th Cir. 1982). Absent such a showing, defendant has no expectation of privacy in the Trailblazer and cannot challenge the warrantless seizure of the cellphones recovered from the vehicle.

Even if the court found that defendant has standing, one of the six cellular phones was taken from Arnold's person. This phone was seized incident to his arrest and the seizure was therefore proper even without a warrant. *Chimel v. California*, 395 U.S. 752, 762-63 (1969). As for the other telephones, the government argues that the vehicle was properly searched pursuant to the automobile exception and/or the inventory search exception to the warrant requirement.

"[P]olice officers may conduct a warrantless search of a vehicle if they have 'probable cause to believe that the vehicle contains evidence of a crime.'" *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (citation omitted). The Detroit Police officers had probable cause to believe that evidence of a crime, possession of a stolen vehicle, could be found in the Trailblazer. It does not make a difference that the Trailblazer was immobile at the time of the search. *Id*. at 650. The Sixth Circuit explained that the automobile exception "is justified not only by the exigency created by the

'ready mobility' of vehicles, but also by the lesser expectation of privacy operators have in their vehicles." *Id*.

A second exception to a warrantless search is that an inventory search can be conducted if the police have "lawfully tak[en] custody of the vehicle." *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998). The Trailblazer was in no condition to be driven away and was going to be impounded by the police. After the firearm was found inside the Trailblazer and the FBI took over the investigation, the FBI could seize items out of the vehicle in accordance with its inventory policy.

Finally, as the government points out, the cell phones would inevitably have been discovered once the owner of the Trailblazer gave her consent to the FBI to search her vehicle.

C. Search Warrant for Contents of Phone

On October 7, 2015, the government sought, and Magistrate Judge Patti issued, a search warrant for the seized cell phones based on an affidavit by FBI Special Agent Vincente J. Ruiz. The warrant authorized the search for and seizure of "all information and records, contained in the devices . . . that relate to violations of Title 18 United States Code Section 1959(a)(1), (a)(3), and (a)(5); 1962 (a)-(d), 922(g), 924(c), and 21 USC 841 and 846 . . ."

A search warrant is valid if probable cause existed to support its issuance. To evaluate probable cause, courts are instructed “simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [it] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.” *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The facts and circumstances taken as a whole must give the magistrate probable cause to believe the items sought would be found during the search. *See, id., Zurcher v. Stanford Daily*, 436 U.S. 547, 566 (1978). “[R]eviewing courts are to accord the magistrate’s [probable cause] determination great deference.” *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000). Once a magistrate has determined the existence of probable cause, that decision should only be reversed if it was arbitrarily made. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006).

The affiant, SA Ruiz, explained his experiences investigating the Seven Mile Bloods, including that gang members utilize social media to stay in contact and promote themselves and keep photographs of themselves and other gang members. He listed his sources of information to include “witness interviews, confidential sources of information, analysis of telephone toll records, Facebook records, physical and video surveillance, and the identification and review of historical criminal

activities." Affidavit at 15. A review of jail calls and social media accounts confirmed the gang members' use of their phones to conduct their business and post photographs and videos. *Id*. at 18. Ruiz confirmed the gang's use of social media and phones with the specifics surrounding the "Block Day" party, with gang members posting photos and videos from inside the Crazy Horse during the party. *Id*. at 19-20. The government avers that the affidavit taken as a whole makes out probable cause to search the cell phones for the listed offenses.

Defendant maintains that the factual assertions in the affidavit are conclusory and do not identify the information upon which the broad conclusions are based. For example, Ruiz expresses his belief that defendant Arnold is a member or associate of the SMB, but does not explain how or why he came to this conclusion, or the conclusion that members use cell phones in various ways to further their allegedly unlawful activities. The affidavit does not explain what Ruiz saw, what anyone told him, what records he examined – nothing upon which he could base his conclusions. Defendant argues there was nothing for the magistrate judge to look to in order to test the accuracy of Ruiz's conclusions. Defendant characterizes the affidavit as a "bare bones affidavit."

Even if the court were to find that the affidavit lacked probable cause, the exclusionary rule does not apply where the law enforcement officers

executing the search warrant acted in good faith in relying on the search warrant. *United States v. Leon*, 468 U.S. 897, 922 (6th Cir. 1984). The *Leon* case describes four situations where an officer's reliance on an invalid warrant cannot be considered objectively reasonable:

> (1) When the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia or probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid.

*Id*. at 914-15.

Defendant maintains that the bare bones nature of the affidavit forecloses reliance on the good faith exception, so the evidence acquired in the course of the execution of that warrant, as well as the evidence derived from it, must be suppressed.

The court finds that given all of the circumstances set forth in the affidavit, in particular the affiant's knowledge obtained investigating the Seven Mile Bloods specifically, the magistrate judge could reasonably conclude that there was a fair probability that evidence of a crime would be found on the cell phones. The court does not find any basis to support a finding that an officer's reliance on the search warrant cannot be considered objectively reasonable.

Therefore, even if the court found that the search warrant should not have been issued based on the affidavit, the exclusionary rule would not apply because the officers executing the warrant acted in good faith in relying on the search warrant, as set out in *Leon*.

## III. Conclusion

For the reasons set forth above, as well as those given by the court on the record at the conclusion of oral argument, defendant Billy Arnold's motion to suppress is DENIED.

Dated: August 31, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 31, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk