UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                  Case No. 15-20652-01

vs.

                                  HON. GEORGE CARAM STEEH

BILLY ARNOLD, D-1,

        Defendant.
_____/

ORDER DENYING DEFENDANT'S MOTION TO DECLARE
THE FEDERAL DEATH PENALTY ACT UNCONSTITUTIONAL
<u>AND TO STRIKE THE NOTICE OF INTENT [ECF No. 1398]</u>


       This matter is before the court on defendant Billy Arnold's motion to

declare the Federal Death Penalty Act unconstitutional and to strike the

notice of intent to seek the death penalty. ECF No. 1398. The government

filed a response brief, ECF No. 1424, and defendant did not file a reply.

Neither party has requested oral argument or an evidentiary hearing and

the court agrees that the motion can be resolved on the briefs. For the

reasons stated below, the court denies defendant's motion.

# I.   BACKGROUND

On January 3, 2018, a federal grand jury returned a sixth superseding indictment charging 21 defendants with various crimes, including violating the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Defendant Arnold is charged with two counts of murder in aid of racketeering, two counts of using and carrying a firearm during and in relation to a crime of violence causing death, RICO conspiracy, numerous VICAR counts, possession of a firearm during and in relation to a crime of violence (RICO conspiracy), and felon in possession of a firearm. ECF No. 812. On January 8, 2018, the government filed its notice of intent to seek the death penalty against Arnold. ECF No. 817.

The sixth superseding indictment also includes a Notice of Special Findings found by the grand jury:

2. As to Counts 4, 5, 16, and 17, the defendant BILLY ARNOLD:

 (a)   was 18 years of age or older at the time of the offenses alleged in Counts 4, 5, 16, and 17;

 (b)   intentionally killed D.P. (Counts 4 and 5) and D.R.-1 (Counts 16 and 17) (18 U.S.C. § 3591 (a)(2)(A));

 (c)   intentionally inflicted serious bodily injury that resulted in the death of D.P. (Counts 4 and 5) and D.R.-1 (Counts 16 and 17) (18 U.S.C. § 3591 (a)(2)(B));

(d) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and D.P. (Counts 4 and 5) and D.R.-1 (Counts 16 and 17) died as a direct result of these acts (18 U.S.C. § 3591 (a)(2)(C));

(e) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that the participation in the act constituted a reckless disregard for human life and D.P. (counts 4 and 5) and D.R.-1 (Counts 16 and 17) died as a direct result of the act (18 U.S.C. § 3591 (a)(2)(D));

(f) committed the offenses alleged in Counts 4, 5, 16, and 17 after having been previously convicted of a Federal or State offense punishable by a term of imprisonment of more than 1 year, involving the use or attempted or threatened use of a firearm (as defined in section 921) against another person (18 U.S.C. § 3592(c)(2));

(g) in committing the offenses in Counts 4, 5, 16, and 17, knowingly created a grave risk of death to 1 or more persons in addition to D.P. (counts 4 and 5) and D.R.-1 (Counts 16 and 17);

(h) committed the offenses alleged in Counts 16 and 17 after substantial planning and premeditation to cause the death of a person (18 U.S.C. § 3592(c)(9)); and

(i) in committing the offenses in Counts 4, 5, 16, and 17, intentionally killed and attempted to kill more than one person in a single criminal episode (18 U.S.C. § 3592(c)(16)).

ECF No. 812, PageID 4633-4635.

Defendant raises three challenges to the Federal Death Penalty Act

("FDPA") based on the Fifth, Sixth and Eighth Amendments. First,

defendant argues that "the Supreme Court's decisions in *Ring v. Arizona*, *Hurst v. Florida* and *Jones v. United States* demonstrate that aggravating factors necessary to a capital verdict are essential elements of the capital offense which must be presented to a grand jury and alleged in the indictment[.]"  ECF No. 1398, PageID 18141.  Because the FDPA does not expressly provide for presentation of aggravating factors to a grand jury, but instead vests authority to identify aggravating factors with the prosecutor, defendant maintains that the FDPA is unconstitutional under the Fifth and Sixth Amendment.  Second, defendant argues that the Notice of Special Findings in the sixth superseding indictment and the notice of the non-statutory aggravating factors in the notice of intent should be stricken because the indictment does not comply with the requirements of the Fifth Amendment.  Third, defendant argues that "the FDPA fails to provide a structure that permits jurors to make a reasoned choice between execution or a sentence of life in prison without the possibility of release . . . ."  *Id.* at PageID 18142.  A death penalty scheme that creates an unreasonable risk that jurors will misunderstand the process violates the Eighth Amendment and the Fifth Amendment Due Process Clause.

## II.    DISCUSSION

## A.    Federal Death Penalty Act

In 1994, Congress enacted the FDPA, which establishes procedures for pursuing the death penalty.  The statute provides that a sentence of death may not be sought unless "the attorney for the Government believes that the circumstances of the offense are such that a sentence of death is justified."  18 U.S.C. § 3593(a).  If so, the prosecutor then serves and files a notice stating that "the Government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified. . . and that the Government will seek a sentence of death."  18 U.S.C. § 3593(a)(1).

The FDPA sets forth a bifurcated trial procedure.  First is the guilt phase, where the jury is asked to determine whether the prosecution has proven, beyond a reasonable doubt, that the defendant has committed a crime punishable by death.  If the jury finds the defendant guilty of a capital crime, the case moves to the penalty phase, which consists of two parts, eligibility and selection.  In the eligibility portion, the jury must find three factors beyond a reasonable doubt: that the defendant was at least 18 years old at the time of the offense, that the defendant had at least one of

four enumerated mental states (referred to as gateway or threshold intent factors), and that at least one statutory aggravating factor exists. 18 U.S.C. § 3591(a)(2); 3593(c). The jury must unanimously agree as to which threshold intent factor(s) and which statutory aggravating factor(s) exists. 18 U.S.C. § 3593(d). If the jury finds all three factors beyond a reasonable doubt, the defendant becomes *eligible* for the death penalty. At that point, the maximum penalty the defendant can receive is the death penalty.

The selection portion of the penalty phase requires the jury to consider additional evidence offered by the prosecution to justify the death penalty, referred to as non-statutory aggravating factors. The jury also considers evidence offered by the defense as a reason not to sentence the defendant to death, referred to as mitigating factors. Based on its weighing of these competing factors, the jury *selects* whether to sentence the defendant to life imprisonment or to the death penalty.

In the case of Mr. Arnold, the sixth superseding indictment lists the statutory threshold intent factors required by 18 U.S.C. § 3591(a) as well as the statutory aggravating factors required by 18 U.S.C. § 3592(c). The indictment does not list the non-statutory aggravating factors identified in

the notice of intent and does not list any mitigating factors that may be identified by Arnold during a potential sentencing phase.

## B.    Impact of *Ring* and *Hurst* on FDPA

Defendant argues that in enacting the FDPA, Congress granted exclusive authority to allege aggravating factors to the prosecutor. Defendant further contends that, under the FDPA, statutory aggravating factors are essential elements to initiating a capital prosecution.  Therefore, defendant concludes that the Supreme Court's decisions in *Ring* and *Hurst* render the FDPA unconstitutional for failing to require that all essential elements of the offense be presented to the grand jury and pleaded in the indictment.  Because only Congress has the power to define and create offenses against the United States, and the punishment therefor, *United States v. Hudson*, 11 U.S. 32, 34 (1812), courts must reject any attempt to interpret or revise the FDPA in order to find it constitutional where doing so is contrary to the unambiguous intent of Congress.

The Supreme Court considered Arizona's capital sentencing scheme in *Ring v. Arizona*, 536 U.S. 584, 585 (2002).   Arizona's statute provided that after a jury adjudicated a defendant's guilt of first-degree murder, the

trial judge, alone, determined the presence or absence of the aggravating

factors required for imposition of the death penalty.  The Supreme Court

had previously found that the statute was constitutional because the

additional facts found by the judge qualified as sentencing considerations,

not as "element[s] of the offense of capital murder."  *Walton v. Arizona*, 497

U.S. 639, 649 (1990).

A decade after deciding *Walton*, the Court decided the case of

*Apprendi v. New Jersey*, 530 U.S. 466 (2000), holding that the Sixth

Amendment does not permit a defendant to be "expose[d] . . . to a penalty

*exceeding* the maximum he would receive if punished according to the

facts reflected in the jury verdict alone."  *Id.* at 483.  Based on *Apprendi's*

reasoning, the *Ring* Court overruled *Walton*, concluding that "[c]apital

defendants, no less than noncapital defendants . . . are entitled to a jury

determination of any fact on which the legislature conditions an increase in

their maximum punishment."  *Ring*, 536 U.S. at 589.  The Court concluded

that the Arizona statute violated the Sixth Amendment because it entrusted

the judge, rather than the jury, with finding statutory aggravating factors

that operated as "the functional equivalent of an element of a greater

offense" and therefore were necessary for imposition of the death penalty. *Id.* at 585 (quoting *Apprendi*, 530 U.S. at 494, n.19).

*Ring* did not discuss the grand jury and indictment issue because the case arose in the context of a state statute to which the Fifth Amendment's Indictment Clause does not apply. However, "other circuits have unanimously found that the holding applies with equal force in the context of a Fifth Amendment challenge to the lack of statutory aggravating factors in an indictment charging a death-eligible crime under the FDPA." *United States v. Brown*, 441 F.3d 1330, 1367 (11th Cir. 2006) (citing with approval *United States v. Allen*, 406 F.3d 940, 942-43 (8th Cir. 2005) (en banc); *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir. 2004); *United States v. Higgs,* 353 F.3d 281, 297-98 (4th Cir. 2003)). These courts of appeals have upheld the FDPA against *Ring* challenges where the relevant statutory aggravating factors were in fact presented to the grand jury and included in the indictment, though that is not a requirement expressed in the statute.

The Eleventh Circuit considered and rejected the very argument made by defendant here, concluding that "[t]he FDPA is not facially unconstitutional[]" because it does not "prohibit[] the government from

9

presenting aggravating factors to a grand jury and then, if appropriate, charging those aggravating factors in the indictment." *Brown*, 441 F.3d at 1367. The Fifth Circuit came to the same conclusion, recognizing that the FDPA need not expressly require the government to charge eligibility factors by indictment because the government is already required to do so by the Fifth Amendment. *Robinson*, 367 F.3d at 290. See also, *United States v. Sampson*, 486 F.3d 13, 21 (1st Cir. 2007); *Allen*, 406 F.3d at, 949; *United States v. Barnette,* 390 F.3d 775, 788–90 (4th Cir.2004), *vacated on other grounds,* 546 U.S. 803 (2005).

Defendant argues that each appellate court that has concluded there is no constitutional or statutory impediment to presenting the FDPA's aggravating factors to a grand jury in order to avoid unconstitutionality under *Ring* has employed flawed reasoning. Specifically, defendant contends that the decisions all fail to address the holding in *United States v. Jackson*, wherein the Supreme Court condemned the practice of judicially amending a capital statute in order to preserve its constitutionality. 390 U.S. 570, 573 (1968).

In *Jackson*, the Court considered the federal kidnapping statute, which contained a mandatory death penalty when a jury recommended it.

As a result, the statute made the death penalty possible only for defendants who exercised their right to trial by jury. The government proposed alternative "constructions" of the statute to salvage the death penalty provision. The Court declined to allow judicial amendment of a capital statute in order to preserve its constitutionality, holding "[i]t is unnecessary to decide here whether this conclusion [the Government's proposed "fix" of the death-penalty aspects of the federal kidnapping statute] would follow from the statutory scheme the Government envisions, for it is not the scheme that Congress enacted." *Id*. at 573. The Court pointed out the statute "sets forth no procedure for imposing the death penalty upon a defendant who waives the right to jury trial or one who pleads guilty." *Id*. at 571.

According to defendant, the government has attempted to resolve the problems with the FDPA by adopting a practice of seeking "special findings" from the grand jury as part of the indictment process. Defendant argues that under *Jackson* and the Separation of Powers Doctrine the government should not be permitted to amend the FDPA in order to save it. If the provision allocating the power to charge aggravating factors to the prosecutor is declared unconstitutional, the FDPA "sets forth no procedure"

for alleging aggravating factors.  *See id.* at 576.  Under these circumstances, the court cannot "fix" the statute, it can only invalidate the statute.  Defendant urges the court to declare the FDPA unconstitutional until further congressional action can be taken.

Congress enacted the FDPA in 1994, a few years after the Supreme Court's holding in *Walton v. Arizona* that "the Sixth Amendment does not require that the specific findings authorizing the imposition of the sentence of death be made by the jury."  497 U.S. at 648.  *Walton* held that the facts necessary to render a defendant eligible for the death penalty were not elements of the offense itself, making the Fifth Amendment requirement that the elements of an offense be charged by a grand jury in an indictment inapplicable.  As described above, the Supreme Court overruled *Walton* a decade later when it decided *Ring*.  536 U.S. at 609.  However, the fact that the FDPA was enacted when *Walton* was the law explains why Congress did not specify that the statutory aggravating factors had to be presented to the grand jury and included in the indictment.  *Sampson*, 486 F.3d at 20.

Many courts of appeals have opined that while the FDPA does not require prosecutors to charge aggravating factors in an indictment, the statute does not inhibit them from doing so.  Those courts note that statutes

rarely expressly provide for submitting elements of an offense to the grand jury.  They recognize that while the FDPA directs the government to charge the aggravating factors in a notice of intent to seek the death penalty, the Act does not preclude the government from also submitting the aggravating factors to the grand jury for inclusion in the indictment.  See *Brown*, 441 F.3d at 1367; *Sampson*, 486 F.3d at 21; *Allen*, 406 F.3d at 949; *Barnette*, 390 F.3d at 789; *Robinson*, 367 F.3d at 290.

Contrary to the argument made by defendant, these courts are not amending the FDPA so that it passes constitutional muster.  Rather, when the government presents aggravating factors to the grand jury, and if applicable includes them in the indictment, it is complying with the Fifth Amendment.  This court agrees with the reasoning of the First, Fourth, Fifth, Eighth and Eleventh Circuits and finds that the FDPA is not facially unconstitutional.

**C.    Notice of Special Findings and Notice of The Non-Statutory Aggravating Factors in the Notice of Intent**

Defendant next argues that the grand jury was not informed that by returning an indictment with Special Findings, defendant would be held to answer for a capital crime.  Therefore, even if the FDPA can be rendered

constitutional by a finding by the grand jury of gateway and statutory aggravating factors, the Special Findings section of the sixth superseding indictment, as well as the non-statutory aggravating factors alleged in the notice of intent, should be stricken because the indictment does not comport with the Grand Jury Clause of the Fifth Amendment.

Defendant contends that pursuant to *Ring*, the facts alleged in the "Special Findings" section of the sixth superseding indictment, as well as the non-statutory aggravating factors alleged in the notice of intent, constitute elements of the offense because they expose him to a punishment greater than that otherwise legally prescribed, *i.e.*, the death penalty.  See *United States v. Booker*, 543 U.S. 220, 244 (2005); *Blakely v. Washington*, 542 U.S. 296, 303 (2004); *Sattazahn v. Pennsylvania*, 537 U.S. 101, 111 (2003).  Defendant maintains that capital sentencing schemes that employ aggravating factors create a new offense, greater than ordinary willful homicide.  This new offense is distinguished by the additional elements those aggravating factors represent.  Therefore, defendant concludes, the aggravating factors must not only be proved by a jury beyond a reasonable doubt, but that they first must be presented to a grand jury and included in the indictment.

In *Hurst v. Florida*, 136 S. Ct. 616 (2016), the Supreme Court reviewed a challenge to Florida's sentencing scheme and found that under *Apprendi* and *Ring* the state's sentencing procedures violated the Sixth Amendment right to a jury trial.  Under Florida law, a jury made an advisory "recommendation" of life or death after an evidentiary hearing, but the judge was required to hold a separate hearing and determine "whether sufficient aggravating circumstances existed to justify imposing the death penalty".  The Supreme Court held that the scheme was unconstitutional because "[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death."  *Id.* at 619-21.  "The State cannot treat the advisory recommendation by the jury as the necessary factual finding that *Ring* requires."  *Id.* at 622.  The Court viewed the trial judge's weighing determination as a finding of fact for purposes of *Apprendi.*

Defendant maintains that the FDPA, like the Arizona scheme in *Ring* and the Florida scheme in *Hurst*, requires additional fact-finding before a jury's verdict finding a federal defendant guilty of murder will support a sentence of death.  The Eleventh Circuit considered this argument and held

that non-statutory aggravating factors do not need to be included in the indictment because they are not elements of the offense:

> Nonstatutory factors are considered only after a defendant has been rendered death-eligible by a finding—from both the grand and petit juries—of the normal elements of the crime (including *mens rea*) and at least one statutory aggravating factor. Nonstatutory factors do not operate to increase the potential punishment of a defendant, thus potentially triggering the indictment requirements suggested in *Jones*. Rather, they are considered by a jury only when determining how a death-eligible defendant should be sentenced: to life in prison or death. Failure to include them in the indictment does not violate the requirements of the relevant case law, and does not constitute constitutional or statutory error.

*United States v. LeCroy*, 441 F.3d 914, 922 (11th Cir. 2006).

The Sixth Circuit agrees with the reasoning employed by the Eleventh Circuit and the other circuit courts that have considered whether non-statutory aggravating factors must be submitted to a grand jury and charged in the indictment to satisfy the Fifth Amendment. In *United States v. Lawrence*, 735 F.3d 385, 420 (6th Cir. 2013), the Sixth Circuit held:

> These courts have reasoned that only those factors necessary to make a defendant eligible for the death penalty—intent and a statutory aggravating factor—must be included in the indictment. Non-statutory aggravating factors are relevant considerations in the sentence selection decision, but do not, in themselves, determine whether a defendant is "eligible" to be considered for the death sentence.

*Id.* (citations omitted).

Defendant argues that *Hurst*, which was decided after *Lawrence*, held that the jury must find each fact necessary to impose a sentence of death. According to defendant, this includes the process of weighing the non-statutory aggravating circumstances against the mitigating circumstances. Defendant's argument is mistaken. The non-statutory factors do not increase the maximum punishment in a capital case under the FDPA. Rather, the FDPA requires the jury to first find the facts necessary to make the defendant death-penalty eligible – one statutory intent factor and at least one statutory aggravating factor. As discussed above, these are the "elements" of a capital crime. A finding by the jury that these two elements exist will make a defendant eligible for a death penalty sentence. Non-statutory aggravating factors are only presented to the jury during the weighing process, the second phase under the FDPA, after the defendant has been found eligible for the death penalty. "Thus, any aggravating factors that expose [a defendant] to the death penalty must be found by the jury, negating any *Hurst* violation." *United States v. Smith*, No. 3:16-cr-00086-SLG-1, 2019 WL 722559, at *2 (D. Alaska Feb 20, 2019); *see also*, *United States v. Ofomata*, No. 17-201, 2019 WL 527696, at *9 (E.D. LA

Feb. 11, 2019) ("[T]he FDPA adheres to the Constitution by requiring that a jury (1) find beyond a reasonable doubt the factors that render a defendant eligible for the death penalty and (2) make the ultimate sentencing recommendation.")  "Indeed, once the jury begins the weighing process, it 'is not acting as a finder of fact'; rather, 'it is exercising discretion in sentencing that is ordinarily exercised by judges.'"  *Ofomata*, 2019 WL 527696 at *8.

For these reasons, the court is not persuaded by defendant's argument that the notice of special findings in the indictment and the notice of non-statutory aggravating factors in the notice of intent should be stricken.

## D.    The FDPA Fails to Provide Structure for the Jury to Determine Execution or Life Sentence

Defendant's final challenge to the FDPA is that the act does not comply with the Supreme Court's requirement that "where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action."  *Gregg v. Georgia*, 428 U.S. 153, 189 (1967).

Referred to as the "guided discretion" process, the pool of death-eligible defendants is to be narrowed in an objective way, and every eligible defendant then is entitled to individualized sentencing in which his or her character and background are put into evidence and the jury is given unfettered discretion to exercise mercy. Defendant argues that the FDPA does not provide jurors a sufficient structure within which to discharge its duties.

In support, defendant cites to statistics and articles published by the Capital Jury Project that conclude capital jurors often fail to apply or misapply the instructions in death penalty cases. Defendant argues that "[a] death penalty sentencing scheme that creates an unreasonable risk that juror will misunderstand that process violates the Eighth Amendment and the Due Process Clause." ECF No. 1398, PageId 18195 (citations omitted).

The *Ofomata* court recently rejected the same argument which relied on the same social studies articles:

> Regardless of the validity of these studies, the argument is foreclosed by precedent that is binding on this Court. *See Gregg*, 428 U.S. at 195; *United States v. Robinson*, 367 F.3d 278, 291 (5th Cir. 2004); *Jones*, 132 F.3d at 252–53; *see also*

> *Davis*, 2003 WL 1837701, at *12 (finding "that the studies cited by defendant are not sufficient to call into question the constitutionality of the FDPA's sentencing scheme" and "that a jury can be instructed so that it will understand and appropriately apply the FDPA's provisions").

*Ofomata*, 2019 WL 527696 at *4. This court is mindful of the concerns raised by the studies and articles cited by defendant and acknowledges that care must be given to provide the jury with instructions sufficient to guide them in executing their responsibility. Even so, the court does not believe defendant has demonstrated that the FDPA is unconstitutional for being difficult to understand and apply. When adequately instructed, the jury will be able to comprehend the provisions of the FDPA and there is an "almost invariable assumption of the law that jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

## III.    CONCLUSION

For the reasons stated above, defendant's motion to declare the FDPA unconstitutional and to strike the notice of intent is DENIED.

So ordered.

Dated:  August 13, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon
attorneys of record on
August 13, 2019, by electronic and/or
ordinary mail.

s/Marcia Beauchemin
Deputy Clerk