```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                          SOUTHERN DIVISION
```

**UNITED STATES OF AMERICA,**

               Government,

                                **HONORABLE GEORGE CARAM STEEH**

    v.

                                **No. 15-20652**

**BILLY ARNOLD,**

               Defendant.

_____/

**MOTION HEARING**

**Wednesday, August 21, 2019**

-   -   -

APPEARANCES:

For the Government:           MARK BILKOVIC, ESQ.
                          RAJASH PRASAD, ESQ.
                          Assistant U.S. Attorney


For the Defendant:             ERIC K. KOSELKE, ESQ.
                          MARIA P. MANNARINO, ESQ.
                          RICHARD M. JASPER, JR., ESQ.

-   -   -

*To Obtain Certified Transcript, Contact:*
*Ronald A. DiBartolomeo, Official Court Reporter*
*Theodore Levin United States Courthouse*
*231 West Lafayette Boulevard, Room 1067*
*Detroit, Michigan  48226*
*(313) 962-1234*

*Proceedings recorded by mechanical stenography.*
*Transcript produced by computer-aided transcription.*

1                               I   N   D   E   X

2    _____Page

3    Motion hearing                                                   3

4

5

6

7

8

9

10

11

12

13

14

15                         E   X   H   B   I   T   S

16   Identification_____Offered    Received

17

18                        N        O        N        E

19

20

21

22

23

24

25

                        *15-20652; USA v. BILLY ARNOLD*

```
 1                              Detroit, Michigan

 2                              Wednesday, August 21, 2019

 3

 4                         -    -    -

 5              THE CLERK:  Case Number 15-20652, United

 6   States of America versus Billy Arnold.

 7              MR. PRASAD:  Good morning, your Honor.  Raj

 8   Prasad and Mark Bilkovic on behalf of the United States.

 9              THE COURT:  Good morning.

10              MR. KOSELKE:  Good morning, your Honor.  Eric

11   Koselke on behalf of Billy Arnold.

12              MR. JASPER:  And Richard Jasper.  Good

13   morning, your Honor.

14              THE COURT:  Good morning.  Good to see you.

15   And Ms. Mannarino?

16              MS. MANNARINO:  Good morning.  Nice to see

17   everybody again.  Maria Mannarino also on behalf of Mr.

18   Arnold.

19              THE COURT:  Okay.  Welcome.  All right.  So

20   we're going to be talking about deadlines, and where would

21   you like to start?

22              MR. KOSELKE:  I think we can start with the

23   discovery motion first.

24              THE COURT:  Okay.  Have there been some

25   discussions since the motion was submitted?
```

*15-20652; USA v. BILLY ARNOLD*

1          **MR. PRASAD:**  Not in terms of these motions,

2    Judge.  We did agree on certain other extensions that the

3    defense has requested, but not the substance of the

4    discovery motion itself.

5          **THE COURT:**  Okay.  So who is going to address

6    this question first?

7          **MR. KOSELKE:**  Mr. Jasper will.

8          **THE COURT:**  Okay.

9          **MR. JASPER:**  Good morning again, your Honor.

10         **THE COURT:**  Good morning.

11         **MR. JASPER:**  Judge, I'm going to address a

12   couple of points upfront about the government's argument,

13   and then Mr. Koselke is going to dive into more detail

14   about it.

15         **THE COURT:**  Okay.

16         **MR. JASPER:**  Right from the start I think it

17   is important to understand that death is different and

18   heighten reliability is needed in capital cases is much,

19   much more than rhetoric, and the Supreme Court has stated

20   that time and time again.

21         One of the things that caught my eye just

22   initially about the government's -- I don't want to say

23   tone.  Perhaps position is better -- appears on Page 5 of

24   their main brief.  Toward the bottom of the page they cite

25   a case, California versus Ramos, and they quote, the

*15-20652; USA v. BILLY ARNOLD*

1     Court's principal concern has been more with the procedure

2     by which the state imposes a death sentence than with the

3     substantive factors the state lays out before the jury as

4     a basis for imposing death, and that is simply not my

5     understanding.

6           The Supreme Court has addressed the substantive

7     nature of mitigation, which it has referred to in the case

8     of Ayers versus Belmonte, A-y-e-r-s, B-e-l-m-o-n-t-e.  The

9     Supreme Court has stated that mitigation is potentially

10    infinite, that is, the factors are potentially infinite,

11    and actually in the Tennard case which the government,

12    T-e-n-n-a-r-d, the court has mentioned that there are

13    virtually no limits on mitigation.

14          So I just say that as a backdrop to some of the

15    requests for discovery.  It is quite broad.  It is

16    literally nothing -- mitigation in a death penalty case is

17    nothing like it is in a non-capital case.  This isn't

18    3553(a) land.  It is literally anything that at least one

19    juror -- only takes one -- one juror could find to impose

20    a sentence less than death.  That's essentially the

21    Supreme Court's definition of mitigation.

22          So it's not rhetoric.  It is reality, and these

23    are actual statements that the Supreme Court has mentioned

24    time and time again.

25          I think it is important to mention that upfront

*15-20652; USA v. BILLY ARNOLD*

1   because that concept of what is mitigation is something

2   that we will -- excuse me -- that the Court and the

3   parties will probably be revisiting across time as we deal

4   with different aspects of the case.

5         And so with that backdrop, Mr. Koselke will

6   address some of our discovery requests.

7               **THE COURT:**  Okay.

8               **MR. JASPER:**  I should also say, your Honor --

9   I'm sorry -- with respect to heighten reliability,

10  although it might not be in the death penalty statute --

11  and the Ramos case that the government cites is a 1983

12  case.  Many of the mitigations cases like Wiggins versus

13  Smith, and Tennard, are 2003 and 2006 -- but the notion of

14  heighten reliability has been recognized in this district

15  in the last death penalty case, I think the O'Reilly and

16  any number of cases where the court in order to make sure

17  that the heighten reliability spoken about in the Woodson

18  case is actually effectuated before the court has held

19  hearings when evidence may not be reliable because of the

20  evidentiary standard at the penalty phase, and even at the

21  guilt-innocence phase.

22        So there is quite a list of cases where courts

23  have reached out and have said yes, I need to make sure

24  that this is reliable given the fact that death is

25  different.

*15-20652; USA v. BILLY ARNOLD*

1          So with that, your Honor, I'll turn it over to Mr.

2     Koselke.

3               **THE COURT:**  All right.  Thank you.

4               **MR. KOSELKE:**  Thank you, your Honor.

5          Instead of restating the law and everything in the

6     motion, I just thought the best thing to do is go to

7     points where there is some contention, and I'll start off

8     with the issue of Brady material.

9          We asked that it be turned over as soon as it is

10    discovered.  The government says it will disclose it

11    reasonably after discovery.  So there's almost no

12    difference between what we're requesting and what the

13    government is requesting regarding Brady.

14         Gigilo or Gigilo, however you pronounce it --

15              **THE COURT:**  I have some interest in this

16    also, and that is, we -- if we follow the turn over by

17    dates that are advanced, we're going to have everything

18    before the Court to be decided still 60 days out from

19    the -- and it's my concern that you might get it off your

20    table, but that, along with dozens of other potential

21    issues are all going to be presented to the Court for a

22    decision by the Court on the eve of jury selection at

23    best.

24         And in general, the offer to -- or the request to

25    be allowed to file things a certain number of days before

1    the trial, that would be mean that we would be in the

2    midst of jury selection when these deadlines come and go,

3    and then I've got everything left for me to be decided,

4    argument to be heard.  It concerns me that we can't figure

5    out a way of spacing this out a little more efficiently.

6         I do tend to agree I think with the defense

7    position that 60 days before trial should be 60 days

8    before jury selection starts because that's the trial

9    after all, and you're not going to be getting other things

10   done during that period if we haven't made it clear that

11   these things are due before the jury selection actually

12   ensues.

13        **MR. KOSELKE:**  And that was a point that I was

14   going to address.  We have -- our deadlines are all based

15   on the start of jury selection, because there's no way we

16   can begin to pick a jury appropriately unless we know what

17   the evidence or discovery material is.

18        In regards to Gigilo or Gigilo, however you

19   pronounce it, the government puts forward two arguments

20   that they should be allowed to disclose it with regard to

21   government witnesses, law enforcement witnesses, 30 days

22   before trial and other days 45 days before trial.

23   Obviously, we ask that this information be turned over as

24   soon as it is discovered.

25        The government's argument is -- and this goes on

*15-20652; USA v. BILLY ARNOLD*

1    throughout many of their requests -- we know what the

2    evidence is, or we already have it, but we don't know that

3    because at the same time throughout their brief, they're

4    saying well, we may add witnesses.

5         So a lot of these issues can be resolved if the

6    government would state on the record yeah, we stipulate.

7    We've given you everything.  They just go away.

8         Would the Court like to take a recess in light of

9    what the Court said and talk to the defendant?  I hate to

10   do that, but I think we might be able to dispose of

11   things.

12            **THE COURT:**  That be all right.  I have a

13   piece of candy back there that I can take care of.

14            **MR. KOSELKE:**  Thank you, your Honor.

15            **THE COURT:**  All right.

16

17            (Recess taken.)

18

19            (Proceedings resumed.)

20

21            **MR. PRASAD:**  Your Honor, if I may, with the

22   understanding that the Court is interested in creating

23   deadlines that include the jury selection date of

24   July 20th, what counsel and I -- all counsel actually were

25   speaking during the break -- was establishing at least

*15-20652; USA v. BILLY ARNOLD*

1      three timelines -- three dates that we can come to an

2      agreement on.

3              First would be a May 21, 2020 date.  That is

4      approximately 60 days before jury selection.  On that date

5      we will give defense counsel a preliminary witness list

6      for this case.

7              Two weeks later on June 5, 2020, we will provide

8      to defense counsel the law enforcement Gigilo.

9              I just want to make this point, and something that

10     we've discussed with defense counsel, and I reiterated it

11     in our brief.  Because there has been two trials in this

12     case, we believe -- Mr. Bilkovic and I believe that when

13     we look at this case, 90 to 95 percent of the case that we

14     would be presenting against Mr. Arnold, is stuff that's

15     already been in front of this Court with witnesses that

16     have already testified before this Court.

17             What I have explained to defense counsel is that

18     we do look for an updated Gigilo request.  So even though

19     there's been previous Gigilo checks and previous Gigilo

20     disclosures from the previous two trials, in which defense

21     counsel has received those disclosures, we are still, even

22     with a new witness list, even though we're talking about

23     90 to 95 percent of the same witnesses, we're still going

24     to do an update check on it, and make sure there isn't

25     anything new that has come out in the last year that did

                      *15-20652; USA v. BILLY ARNOLD*

1    not know about earlier.

2          So we're looking at a June 5, 2020 date for the

3    government to turn over the law enforcement Gigilo, and on

4    June 22, 2020, to turn over the civilian.

5          June 22nd puts us at approximately 30 days -- I

6    think it's actually 29 days before the start of jury

7    selection.  On that date, in addition to the civilian

8    Gigilo, we will also provide a final witness list to the

9    Court and counsel with the one caveat, that we would

10   request the opportunity if something happens unforeseen,

11   that he have the opportunity to approach the Court and

12   counsel say, hey, we thought we were going to have this

13   witness, and it turns out that we have to have this

14   witness instead, and discuss it with the Court and counsel

15   for permission to do so.

16               **THE COURT:**  Okay.  Mr. Koselke?

17               **MR. KOSELKE:**  And that's what we've agreed to

18   on behalf of Mr. Arnold.

19               **MR. JASPER:**  Judge, if I might?

20               **THE COURT:**  Yes.

21               **MR. JASPER:**  And Judge, we understand that

22   there's been two long trials of co-defendants, non-capital

23   co-defendants, some of whom the government decided not to

24   seek the death penalty against.  Our concern simply is

25   that we want to make sure we are doing our job with

*15-20652; USA v. BILLY ARNOLD*

1    respect to that five percent that it is not something that

2    is explosive that we would need to be aware of to make

3    sure that we voir dire on.

4         So that's why we are concerned about that, but

5    we've spoke to the government about it, and we think that

6    we've worked that out.  That's our concern.  It's not that

7    we're unmindful that two trials have been conducted with

8    voluminous discovery.

9              **THE COURT:**  Okay.  Thank you.

10             **MR. PRASAD:**  And part of that, your Honor, in

11   some of the responses that we've done in some of our

12   motions -- and the Court might have seen this -- is that

13   the fact of all the substantive counts, taking -- putting

14   aside the RICO conspiracy count -- all of the substantive

15   assaultive counts that Mr. Arnold is charged with, I

16   believe if memory serves me correctly, there's 31

17   counts -- all of those counts have had sworn evidence

18   presented in either one or both of the previous trials.

19        So that's why I say with some confidence that 90

20   to 95 percent of the evidence has been presented in one

21   form or the other previously in one of two trials.

22        What we do know, what Mr. Bilkovic and I were

23   talking about, is that some of the evidence in the overt

24   acts of the RICO conspiracy, specifically in terms of some

25   of the drug -- some of the drug overt acts in West

*15-20652; USA v. BILLY ARNOLD*

1    Virginia that may specifically relate to Mr. Arnold, we

2    may not have presented in the previous trials, because as

3    the Court may recall, when it came to West Virginia

4    testimony, because there were so many different things

5    involving different defendants, we tried to tailor each

6    one at each trial to more specifically to those defendants

7    that were involved in those trials.

8           So we believe that the discovery has been

9    presented in those cases.  Counsel has the discovery as to

10   those incidents, but we don't believe that those overt

11   acts may have been presented in the previous trials, some

12   of the drugs involving with Mr. Arnold.

13                **THE COURT:**  Okay.

14                **MR. JASPER:**  Your Honor, we understand and

15   appreciate that.  Again, our concern is that there's been

16   two prior trials, but when you look at it really, Mr.

17   Arnold was not a party to either one of those trials.  He

18   wasn't in the courtroom.  Cross-examination was different,

19   and so we just want to make sure that there isn't

20   something that was being held back, not in a negative or

21   bad faith way, but what simply was not necessary for those

22   trials since Mr. Arnold was not a party and present in the

23   courtroom.  Obviously, he was mentioned, but it just takes

24   on a whole different perspective with him being the only

25   person in the courtroom, and obviously facing capital

*15-20652; USA v. BILLY ARNOLD*

1    punishment.

2            So that's concern.  We want to make sure that we

3    have that, and you know, it's understandable that as

4    witnesses come in, they wouldn't have been -- on direct

5    examination, the things that wouldn't have come up about

6    Mr. Arnold since he was not on trial, and so, we just want

7    to make sure that we have everything because it's been my

8    view, and I think the view of the experience capital

9    counsel, we do not want the jury to be learning about

10   something at the penalty phase or at the guilt-innocence

11   phase that we have not considered in a questionnaire or

12   voir dire on, because that could impact whether or not we

13   have somebody who is substantially impaired.  That's

14   basically how death is different in so many aspects of the

15   trial.

16           **THE COURT:**  Okay.

17           **MR. PRASAD:**  Your Honor, some of the topics

18   that Mr. Koselke and I were discussing that we may

19   either -- we want to address just in terms of where we are

20   with those topics, and we may want to ask the Court

21   permission to come back and address those at a later date.

22   If I can turn it over to Mr. Koselke on those.

23           **MR. KOSELKE:**  I would agree that there maybe

24   two or three topics remaining in dispute over the

25   substance of whether we have a right as oppose to the

                    *15-20652; USA v. BILLY ARNOLD*

1    dates of what should be turned over, and we may be able to

2    come to an agreement on those issues.  We just need more

3    time to work it out.

4              **THE COURT:**  Okay.  So an example?

5              **MR. KOSELKE:**  The victim's background.

6              **THE COURT:**  You might be seeing it as

7    mitigating --

8              **MR. KOSELKE:**  Mitigating.

9              **THE COURT:**  They might seeing it as

10   aggravating?

11             **MR. PRASAD:**  We are not seeing it as relevant

12   or applicable in this case because of the facts of what's

13   being presented in this case.

14             **MR. KOSELKE:**  Another example would be

15   uncharged misconduct of the four other eligible capital

16   defendants.

17             **MR. PRASAD:**  Also, your Honor, what makes it

18   difficult for us from our perspective, your Honor, is

19   we've tried to -- we've tried to expand the discovery

20   where in certain ways, for example, going to the uncharged

21   conduct of the some of the other capital defendants.  In

22   our previous two trials, whenever we would utilize

23   someone's, whether it be a cell phone download or their

24   social media account for trial purposes, we would create a

25   very small -- I don't know, 40, 50, sometimes even a 20

*15-20652; USA v. BILLY ARNOLD*

1   page document that is just a small portion of the entire

2   cell phone download or return from either Facebook or some

3   other social media.

4         And in the prior trials, we would send each and

5   every one of the defendants and their counsel a letter

6   saying if you want to look at the rest of the items of the

7   other parties and their social media accounts or cell

8   phone downloads, please come to our office, and you're

9   welcome to do so, and we made that option available, and

10  in fact, we even sent a letter like that to Mr. Arnold's

11  counsel probably a year or so ago whenever we sent it to

12  the other counsels.

13        Understanding that Mr. Arnold's case is going to

14  be different, we actually put all of those other social

15  media accounts, cell phone downloads onto one hard drive

16  and provided it to Mr. Arnold's counsel.  Instead of just

17  waiting for them, you know, for an open invitation to come

18  to our office, we thought the better policy at least for

19  Mr. Arnold because we have a year before his case is going

20  to start, let's turned it over to them now so they can

21  have a year to look through it.

22        So we are mindful of this idea that Mr. Arnold for

23  reasons very specific to just himself will be looking for

24  different evidence, and we're trying to assist as best we

25  can, but -- and this is where Mr. Koselke and I disagree.

*15-20652; USA v. BILLY ARNOLD*

1    Some of the things that they are asking for we don't

2    believe is even relevant or admissible, and so that's why

3    as much as we are trying to help them, and trying too

4    comply with everything that we think is appropriate, some

5    times we will disagree.

6              **MR. KOSELKE:**  I think the third area has to

7    do with evidence related to unindicted co-conspirators.  I

8    think those are the three issues left, and they don't have

9    anything to do with timing.  I think we're in agreement on

10   that, and we just a few weeks ago received a big bulk of

11   discovery as he indicated, I think Mr. Bilkovic --

12             **THE COURT:**  These are the downloads that Mr.

13   Prasad mentioned?

14             **MR. KOSELKE:**  And there's more to it than

15   that, but yes, and I think the government represented that

16   it was 50,000 pages plus videos, new evidence.  Mr. Anton

17   thinks it's conservative, 100,000 pages plus videos.

18   That's the reason these other issues related to the

19   Atkins.

20             **THE COURT:**  Other issues related to --

21             **MR. KOSELKE:**  Atkins stipulating.

22             **THE COURT:**  Okay.  So how close to having

23   everything are we as it relates to these massive amounts

24   of material that you have been --

25             **MR. PRASAD:**  Your Honor, we already provided

*15-20652; USA v. BILLY ARNOLD*

1    it to them.  We provided it to them last month.  There's

2    nothing else in terms of our view that's outstanding.  As

3    any case is before this court, obviously as the process

4    gets closer to trial, if there's something different that

5    we haven't turned over, we will.

6              **MR. KOSELKE:**  And I think there's some delay

7    in turning over.  I don't think there's any bad faith,

8    because we were asking Mr. Sloan.  He notified us there

9    was a significant amount of additional discovery I believe

10   in the second week of May.  We were asking for it before.

11   I believe he was in numerous trials and in the process of

12   transferring.  So we didn't get information until late in

13   relation to the deadline.

14             **THE COURT:**  Okay.  Mr. Sloan is gone?

15             **MR. PRASAD:**  He is on assignment in the

16   anti-trust unit in D.C.

17             **THE COURT:**  I see.  Okay.  So it's going to

18   be the two of you?

19             **MR. PRASAD:**  And Mr. Wigod.

20             **THE COURT:**  All right.  What else?

21             **MR. KOSELKE:**  We just have a lot of material.

22             **THE COURT:**  The basic idea that we're

23   counting back the days from jury selection, you're on

24   board with that?

25             **MR. PRASAD:**  Well, we objected, but if that's

*15-20652; USA v. BILLY ARNOLD*

1    what the Court wants --

2              **THE COURT:**  I mean, it would be terrible to

3    be addressing conflicts while in the process of jury

4    selection.  So I think we have to treat that as the start

5    of the trial.

6              **MR. PRASAD:**  Very good.  If that's what the

7    Court wants, we will do it.

8              **THE COURT:**  Great.

9              **MR. PRASAD:**  Mr. Koselke was asking you

10   openly, do you want to set a date to discuss those other

11   legal issues that we have not agreed on, or do you --

12             **MR. KOSELKE:**  Let's talk on the phone, and if

13   we need a hearing, we will ask for it.  So far we have

14   been able to resolve most of the issues.

15             **THE COURT:**  Okay.  Sounds good.

16             **MR. PRASAD:**  Thank you.

17             **THE COURT:**  Is that it for today?  What about

18   the jury questionnaires.  Are you done with fleshing those

19   out?

20             **MR. KOSELKE:**  Not at all.

21             **MR. JASPER:**  Your Honor, I think the final

22   questionnaires are due June 12th.  So we will be turning

23   our attention to those.  Those are quite critical in a

24   case like this, and your Honor is quite accurate I believe

25   about what we will be able to do once jury selection

*15-20652; USA v. BILLY ARNOLD*

1    starts.  It's been my experience that capital jury

2    selections is probably one of most physically draining

3    exercises that one could ever think of.  It's that

4    important.  Each and every juror is literally -- could be

5    the difference between life and death.  It is a pretty

6    intense period of time, and we really won't be able to

7    devote a whole lot to the case once that process has

8    started.  We will probably have an upwards of a thousand

9    questionnaires, which we will vet, people at the extremes,

10   people who would never impose death, and people on the

11   other side would always impose life.

12          So it is a process that we will be working with

13   the government to try to make it easier on the Court and

14   everybody else.

15             **THE COURT:**  At some earlier point we were

16   talking about jury selection, and it was someone's

17   estimate that we needed 7,000 -- 700.  It sounds like

18   7,000 to me -- but 700 perspective jurors.  Is that --

19             **MR. JASPER:**  I think, Judge, that would be a

20   start.  I myself was thinking more along the lines of a

21   thousand.  I've been in a case where there was a thousand

22   questionnaires, and another one that was 2,000.

23          Now the 2,000 was a highly public case in New York

24   City.  It was on the front pages a lot.  So there was a

25   lot of exposure about that case.

*15-20652; USA v. BILLY ARNOLD*

1           In this situation there have been two -- as your

2     Honor and the government well knows -- two long, I think,

3     three month trials which got a lot of press.  So there is

4     that piece to it as well.  So it's a death penalty case.

5     It's a gang case, and there may be jurors who were

6     previously exposed to the prior two trials, and that's the

7     only reason I would think going to the higher number.

8           The other possibility is that we could start with

9     700, but in my other cases, the judges have had to pick up

10     the phone and call the jury clerk and say I need 250 more.

11     It depends on do you want to err on the side of safety, or

12     do you want to see how it goes, and then call in some more

13     jurors, because a lot of people will be dropping out for

14     one reason or the other.

15           **MR. PRASAD:**  Your Honor, this is just more

16     for your information and for defense counsel purposes, in

17     terms of the pretrial publicity, I know in terms of

18     picking the jury for the third trial group where the

19     defendant ended up pleading after the first day of jury

20     selection, pretrial publicity did not seem to be a big

21     problem for us in terms of having to weed out too many

22     people because of that.

23           But the only thing that I would ask the Court is

24     that I don't know what Judge Goldsmith is doing with his

25     jury.  They will be picking one I think in March.

*15-20652; USA v. BILLY ARNOLD*

1              **THE CLERK:**  April 21st.

2              **MR. PRASAD:**  Thank you.  I'm just curious.  I

3     would like to know what happens with them so it could

4     hopefully guide us if they end up bringing in 700, and if

5     700 does not seem sufficient, then obviously we would

6     agree with defense that we should have more, but if 700 is

7     sufficient, then we can go from there.  I think in that

8     case it is a two defendant case, and ours is a one

9     defendant case.

10             **THE COURT:**  The questionnaire that you

11    anticipate -- you're anticipating a screening device by

12    this questionnaire.  Have you had any discussion about

13    that?

14             **MR. KOSELKE:**  We have not.

15             **MR. PRASAD:**  We have not.

16             **MR. KOSELKE:**  We will.

17             **MR. PRASAD:**  Yes.  We will, Judge, but we

18    have not tackled that.  Have you seen the one used in the

19    previous case?

20             **MR. KOSELKE:**  I did.

21             **MR. PRASAD:**  Okay.

22             **THE COURT:**  Okay.  So the Atkins timeline, I

23    know that you had a proposed stipulation, but is that now

24    been changed to conformed to what we've been talking

25    about?

                    *15-20652; USA v. BILLY ARNOLD*

1          **MR. PRASAD:**  We will add the other dates that

2     we've discussed today.

3          **MR. KOSELKE:**  But that does not change the

4     Atkins date.

5          **MR. PRASAD:**  Correct.  It doesn't change the

6     Atkins date.

7          **THE COURT:**  All right.  Anything else?  I

8     don't know if we've solved the basic problem that I

9     perceive having to do with everything crunched together.

10          **MR. PRASAD:**  There are certain dates closer

11     to trial that we need to move up, certain issues that need

12     to be addressed earlier.

13          **THE COURT:**  I think that would be helpful if

14     you could identify some things that would be decided on

15     earlier rather than having all of these issues come

16     together on the eve of jury selection.

17          **MR. PRASAD:**  Currently in our current order,

18     April 17th is noted as the deadline for motions regarding

19     jury selection process, and motions in limine.  Is that

20     a -- is that -- that puts us roughly three months ahead of

21     trial.  Is that something the Court is looking to move up

22     perhaps, or --

23          **MR. JASPER:**  I mean, why don't we discuss it.

24     Jury selection is obviously one of the big ticket items

25     that we need to talk about I think in a deliberate

*15-20652; USA v. BILLY ARNOLD*

1    fashion, but it's certainly one thing that we would look

2    to.

3         I mean, what we would do is suggest or propose to

4    the Court a particular procedure or way about going about

5    selecting the jury, which the Court could then consider,

6    but I think it's something that we could talk about.

7         I mean, it's August now.  We certainly can talk

8    about that.  There's very little that's as important as

9    jury selection and the whole process and how we approach

10   it.  I think it's something worthwhile that we start

11   talking about in the next couple of weeks.  Certainly we

12   need to talk about it.

13        **THE COURT:**  Okay.  So this conference that

14   you are envisioning, the telephone conference -- the

15   telephone discussion that you are going to have, you're

16   intending to undertake in a couple of weeks?

17        **MR. JASPER:**  We will talk to the government

18   after this conference and see where we are with that, and

19   kick some ideas around.  It might not be a whole lot of

20   disputes on the questionnaire itself.  It may come down

21   to, in my experience, usually a handful or two of key

22   questions that the Court will decide upon.  Usually we can

23   decide upon everything else, but there is usually a couple

24   of key questions that the defense wants and the government

25   objects to.  That's been my experience.

*15-20652; USA v. BILLY ARNOLD*

 1          But it will be a lengthy questionnaire.  It will

 2    be a questionnaire that is designed to elicit general and

 3    specific forms of bias, you know, do you find police

 4    officers always believable?  You know, do you have anyone

 5    in your family in law enforcement, general bias and

 6    specific bias, and then, of course, punishment related

 7    questions, which is really the heart of capital jury

 8    selection.

 9              MR. KOSELKE:  Was the Court's question about

10    jury selection or the three remaining issues that we have

11    to resolve in the next two weeks?

12              THE COURT:  The jury was included in that,

13    but --

14              MR. KOSELKE:  As one of the issues?

15              THE COURT:  Right.

16              MR. PRASAD:  Your Honor, if you would let us

17    in the next couple of weeks discuss it, then we can

18    approach the Court in a couple of weeks with perhaps some

19    earlier timelines for certain issues.

20              THE COURT:  Okay.  That sounds like a plan.

21    Anything else?

22              MR. KOSELKE:  Nothing from the defendant.

23              MR. PRASAD:  Nothing from the government.

24              THE COURT:  This telephone conference was

25    with the Court as well involved?  If that's the case, we

*15-20652; USA v. BILLY ARNOLD*

1   have Mr. Arnold today, but we wouldn't have him for that

2   telephone conference.

3                    **MR. PRASAD:**  And if that's case, we will make

4   that just a timeline issue as oppose to anything

5   substantive, and we can come back for a substantive

6   hearing if we need it.

7                    **THE COURT:**  That makes sense.

8                    **MR. KOSELKE:**  Defense agrees.

9                    **THE COURT:**  Okay.  All right.  Appreciate the

10  work.

11                   **MR. PRASAD:**  Thank you.

12                   **MR. KOSELKE:**  Thank you, your Honor.

13

14                      (Proceedings concluded.)

15                         -     -     -

16

17

18

19

20

21

22

23

24

25

                        *15-20652; USA v. BILLY ARNOLD*

1                    **C E R T I F I C A T I O N**

2

3              I, Ronald A. DiBartolomeo, official court

4     reporter for the United States District Court, Eastern

5     District of Michigan, Southern Division, appointed

6     pursuant to the provisions of Title 28, United States

7     Code, Section 753, do hereby certify that the foregoing is

8     a correct transcript of the proceedings in the

9     above-entitled cause on the date hereinbefore set forth.

10             I do further certify that the foregoing

11    transcript has been prepared by me or under my direction.

12

13    s/Ronald A. DiBartolomeo                 _____
      Ronald A. DiBartolomeo, CSR                    Date
14    Official Court Reporter

15                          -    -    -

16

17

18

19

20

21

22

23

24

25

                          *15-20652; USA v. BILLY ARNOLD*