UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

BILLY ARNOLD, D-1,

        Defendant.
_____/

Case No. 15-20652-01

HON. GEORGE CARAM STEEH

OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT ARNOLD'S MOTION TO DISMISS AND
DENYING MOTION FOR A BILL OF PARTICULARS [DOC. 1462]

This matter is before the court on defendant Billy Arnold's motion to dismiss several counts of the Sixth Superseding Indictment and requesting a bill of particulars for three of the aggravating factors contained in the Notice of Intent to seek the death penalty. ECF No. 1462. The government filed separate response briefs, ECF No. 1476, 1477, and defendant filed a reply, ECF No. 1483. Because oral argument will not aid the court's decisional process, Arnold's motion will be decided based on the parties' briefing. E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the court grants in part and denies in part defendant's motion.

## I. Motion to Dismiss

### A. Count 32 - Possession of a Firearm in Furtherance of a Crime of Violence

In Count 32, defendant is charged with possession of a firearm in furtherance of a crime of violence. The alleged crime of violence is racketeering conspiracy, as charged in Count 1. Defendant argues that racketeering conspiracy is not a crime of violence, so Count 32 must be dismissed. "Crime of violence" is defined by statute as a felony offense that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or "(B) . . . by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3). The first part of the definition is known as the "elements clause" and the second part is known as the "residual clause." The determination whether a charged crime meets the definition of crime of violence is based on a categorial approach that considers the elements and nature of the offense and not the alleged facts of its commission in the case at hand. *See, e.g., United States v. Robinson*, 708 Fed. Appx. 272, 273 (6th Cir. 2017).

Defendant argues that racketeering conspiracy itself, which is an agreement to violate the RICO statute, does not meet the elements clause

because no overt act is required, and the unlawful agreement can be punished even if the substantive crime is never committed. The government need not establish, and the jury need not find, that physical force was used, threatened or attempted by any coconspirator. *See, e.g., United States v. Davis*, 903 F.3d 483, 484 (5th Cir. 2018), *aff'd on merits, vacated as to remedy*, 588 U.S. __, 139 S.Ct. 2319 (June 24, 2019). Furthermore, the residual clause was recently invalidated when the Supreme Court held that it was unconstitutionally vague. *Id.* Therefore, defendant concludes that racketeering conspiracy cannot constitute a crime of violence under 18 U.S.C. § 924(c)(3) and Count 32 must be dismissed.

The government maintains that RICO conspiracy alleged in Count 1 does qualify as a crime of violence under the elements clause because Count 1 includes "Notice of Acts with Enhanced Sentencing" that charge Arnold with multiple crimes of violence. *See* Sixth Superseding Indictment, ¶¶ 4-11 (Djuan Page murder; Davis/Crawford attempted murder; Raphael Carter attempted murder; Dvante Roberts murder; Darrio Roberts attempted murder, Marquis Wicker attempted murder and Jesse Ritchie attempted murder). The government acknowledges that RICO conspiracy itself does not satisfy the elements clause. However, Arnold is charged with various sentencing enhancements, as part of the charged RICO

conspiracy, that increase the statutory maximum sentence from twenty years to life imprisonment. The Supreme Court has held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Furthermore, the "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" are elements of the crime. *Id.* The Supreme Court went so far as to say that such facts that qualify as sentencing enhancements are "the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict . . . and fit[] squarely within the usual definition of an "element" of the offense." *Id.* at 494 n.19.

While the Enhanced Sentencing factors are not considered elements of the general RICO conspiracy, they are elements of the RICO conspiracy charged against Arnold because they increase the statutory maximum penalty to which he is exposed. *United States v. Johnson*, 732 F.3d 577, 583 (6th Cir. 2013) ("*Apprendi* concluded that any facts that increase the prescribed range of penalties to which a criminal defendant is exposed are elements of the crime."). The government argues that since the Enhanced Sentencing factors are elements of the charged RICO conspiracy in Count

1, they may satisfy the elements clause of § 924(c)(3)(A) if they fit within the definition of crime of violence. Here, the Enhanced Sentencing factors allege that Arnold committed multiple murders and attempted murders, all of which contain as an element the use, attempted use or threatened use of force. The government's theory is that the application of *Apprendi* to the definition of crime of violence under § 924(c)(3)(A) allows for the consideration of the Sentencing Enhancements and mandates the conclusion that the charged RICO conspiracy is a crime of violence under the elements clause.

Appellate courts have not considered whether RICO conspiracy with special sentencing factors constitutes a crime of violence under the elements clause. This is because prior to the Supreme Court's decision in *Davis*, RICO conspiracy was routinely considered a crime of violence under the residual clause. The government suggests that it would be prudent to delay a ruling on this issue until appellate courts have an opportunity to address the argument. This court agrees and invites the parties to keep the court informed of developments in the circuit courts.

### B. Counts 5 and 17 – Use of a Firearm in Furtherance of a Crime of Violence Causing Death

In counts 5 and 17, Arnold is charged with capital murder for causing the deaths of D.P. and D.R.-1 by carrying and using a firearm during and in

relation to a crime of violence. The crime of violence is murder in aid of racketeering, as charged in counts 4 and 16.

Defendant argues that for murder in aid of racketeering to be a predicate for a conviction and death sentence under 18 U.S.C. § 924(j), it must meet the definition of crime of violence set forth in 924(c)(3)(A)'s elements clause. The racketeering murder counts Arnold is charged with incorporate Michigan's first-degree murder statute, MCLA § 750.316(1). That statute can be violated in three ways, including "murder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." Defendant argues that because poisoning does not categorically require the degree of violent force sufficient to constitute a crime of violence under § 924(c)(3), the § 924(j) counts against Arnold must be dismissed.

The government counters that VICAR murder is a crime of violence under the elements clause because murder necessarily has the use of force as an element. *See, e.g., United States v. Mathis*, 932 F.3d 242, 264-65 (4th Cir. 2019) (analyzing first-degree murder under Virginia law which requires the "willful, deliberate, and premeditated" killing of another); *United States v. Darden*, 346 F.Supp.3d 1096, 1133-34 (M.D. Tenn. 2018). The government recognizes that courts differ on whether to analyze the

general federal offense or the specific state offense charged in the indictment, but they all arrive at the same conclusion: that VICAR murder is a crime of violence. The government suggests that the correct approach evaluates VICAR predicates by a generic, federal definition, not by the underlying state statute. *See United States v. Mills*, 378 F.Supp.3d 563, 576 (E.D. Mich. 2019).

To establish a VICAR offense, 18 USC § 1959, the government must prove four elements: (1) the organization is a RICO enterprise; (2) the enterprise engaged in racketeering activity; (3) the defendant committed the alleged crime of violence in violation of state law; and (4) an animating purpose of the defendant's action was to gain entrance to, or maintain or increase this position in, the enterprise. *United States v. Odum*, 878 F.3d 508, 516 (6th Cir. 2017). In this case, the third element, crime of violence in violation of state law, is murder. However, the state law is not itself an element of the crime and it need not be alleged in the indictment. Rather, it is sufficient if the jury is instructed on the underlying state crime. *Mills*, 378 F.Supp.3d at 576-77 (*citing United States v. Fernandez*, 388 F.3d 1199, 1219-20 (9th Cir. 2004)); *United States v. Weaver*, 2010 WL 1633319, at *3 (S.D.W. Va. April 20, 2010) ("Under VICAR, the Government must prove as an element that the defendant committed the underlying crime of violence.

Proving this element would entail proving the elements of the predicate offense at trial, but the elements of the predicate crime are not themselves elements of VICAR.").

The Sixth Superseding Indictment provides Arnold with fair notice of the VICAR offense he will be facing at trial, and is sufficiently specific in regard to the particular dates and surrounding circumstances of the murders as to provide Arnold with protection against double jeopardy in the event a murder in aid of racketeering charge is brought in the future based on the same facts. This is all that is required of the government for purposes of the indictment. *See, e.g.*, *United States v. Carrillo*, 229 F.3d 117, 183 (2nd Cir. 2000) ("[o]nly a generic definition of an underlying state crime is required in a RICO indictment, as distinguished from the elements of the penal codes of the various states where acts of racketeering occurred."); *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008) (holding that the failure of the indictment to specify particular predicate drug trafficking offenses for the imposition of 18 U.S.C. § 924(c)(1) did not undermine the indictment's sufficiency because the indictment tracked the statutory language of § 924(c)(1) and was sufficiently specific to protect against double jeopardy). It is not necessary that an indictment alleging a violation of VICAR must also allege the elements required to prove the

underlying state law predicate offense. See *Mills*, 378 F.Supp.3d at 576-77 (collecting cases).

In order to determine whether a predicate violation, incorporated into a federal statute, such as § 1959, falls within the generic definition of a particular type of offense, the Supreme Court has examined state and federal statutes existing at the time Congress enacted the statute at issue. *See, e.g., Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393 (2003). In 1984, when § 1959 was enacted, the principal analogous federal statute was 18 U.S.C. § 1111. Congress intended § 1959's reference to murder to include violations of 18 U.S.C. § 1111 as well as "generic murder" because, in part, Congress viewed § 1111 as too restrictive. *See* S. Rep. No. 98-225 at 305-06, 311.

Courts that have addressed the question have concluded that § 1111 murder is a crime of violence under the elements clause. S*ee, e.g., Thompson v. United States*, 924 F.3d 1153, 1158-59 (11th Cir. 2019) ("Because § 1111(a), by its plain terms, criminalizes the actual killing of another person, the level of force used must necessarily be capable of causing physical pain or injury . . . second-degree murder under § 1111(a) categorically qualifies as a crime of violence under § 924(c)'s elements clause."). The Fourth Circuit specifically rejected the argument that murder

is not categorically a crime of violence because it can occur "without applying direct force", such as by poisoning. *In re Irby*, 858 F.3d 231, 236 (4th Cir. 2017) (*citing United States v. Castleman*, 134 S.Ct. 1405, 1415 (2014). "It is absurd to believe that Congress would have intended poisoners and people who use their wits to place someone in the path of an inevitable force to avoid the force clause of 924(c)." *Id.* at 237.

In *Castleman*, the Supreme Court addressed the poisoning hypothetical and held that the use of force is not the act of "sprinkl[ing] the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or a punch) does not matter." 572 U.S. at 171. The Court concluded, "[u]nder Castleman's logic, after all, one could say that pulling the trigger on a gun is not a 'use of force' because it is the bullet, not the trigger, that actually strikes the victim." *Id.* *Castleman* addressed the force required for conviction of domestic violence assault and whether it qualified as a misdemeanor crime of violence under 924(c). Other Circuits have applied the same reasoning in concluding that force, whether direct or indirect, will be considered categorically violent under § 924(c)'s elements clause so long as such force is capable of causing a violent result. *See*

*Mathis*, 932 F.3d at 264-65; *see also, Hylor v. United States*, 896 F.3d 1219, 1222-23 (11th Cir. 2018), *cert. denied*, 139 S.Ct. 1375 (2019).

The court finds that the crime of first-degree murder under Michigan law qualifies categorically as a crime of violence under the elements clause of 924(c).

### C. Counts 25, 26 and 27 – Duplicitous

Defendant argues that in Count 25, Arnold and others are charged with attempted murder of three individuals in aid of racketeering. These charges did not result from a single act, so defendant argues Count 25 should be dismissed as duplicitous. An indictment is duplicitous if it "joins in a single count two or more distinct and separate offenses." *United States v. Campbell*, 279 F.3d 392, 398 (6th Cir. 2002). The danger is that the jury may find the defendant guilty without reaching a unanimous verdict as to his commission of any particular offense. *Id*. Defendant makes the same argument with respect to Court 26, which charges him and others with assaulting the same three individuals with a dangerous weapon in aid of racketeering. Count 27 is a § 924(c) count based on commission of the crimes of violence alleged in Counts 25 and 26.

Defendant requests that all three counts be dismissed without prejudice so the government may seek a superseding indictment to correct

the problem of duplicity. In response, the government states that it intends to seek a superseding indictment that would charge separate counts for each separate victim of the May 10, 2015 shooting incident. The court grants defendant's motion to dismiss Counts 25, 26 and 27 without prejudice and permits the government to re-file the counts in a superseding indictment.

## II.     Motion for Bill of Particulars

The Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591 *et seq.*, requires the government to serve defendant with a Notice of Intent, before trial, stating that the government will seek the death penalty if defendant is convicted and setting forth the aggravating factors that the government proposes to prove as justifying a sentence of death. 18 U.S.C. § 3593(a). Before the death penalty may be imposed, the jury must unanimously find beyond a reasonable doubt that the defendant had the requisite intent to commit the death-eligible offense. 18 U.S.C. § 3591(a). Next, the jury must find beyond a reasonable doubt that the government has proven at least one of the statutory aggravating factors alleged in its Notice of Intent. 18 U.S.C. § 3593(c). Finally, if at least one statutory aggravating factor is found, the jury must then consider such factor or factors, along with any non-statutory aggravating factors for which notice has been provided, and

weigh them against mitigating factors to determine if the death penalty is warranted. 18 U.S.C. § 3593(e).

Defendant Billy Arnold is charged in 31 of the 35 counts in the Sixth Superseding Indictment. He is also noticed in the Special Findings pursuant to 18 USC §§ 3591 and 3592, including multiple counts alleging that he participated in five separate shootings in 2014 and 2015. The government filed a Notice of its Intent to seek the death penalty against Arnold, listing six aggravating factors in the notice: previous conviction of violent felony involving firearm; grave risk of death to additional persons; multiple killings or attempted killings; substantial planning and premeditation; lack of remorse; and contemporaneous conviction for murder. Arnold seeks a bill of particulars for three of the aggravating factors – substantial planning and premeditation, lack of remorse, and contemporaneous conviction for murder.

In general, "[a] bill of particulars is meant to be used as a tool to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes." *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993). The court "may direct the government to file a bill of particulars" if it determines that the indictment fails to provide enough detail to enable a

defendant to meaningfully prepare for trial. Fed. R. Crim. P. 7(f); *United States v. Musick*, 291 F. App'x 706, 724 (6th Cir. 2008) ("[t]he test in ruling on a motion for a bill of particulars is whether providing such details is necessary to the preparation of the defense and avoidance of prejudicial surprise."). However, a bill of particulars "is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." *Salisbury*, 983 F.2d at 1375.

Defendant acknowledges that by its terms, Rule 7(f) does not apply to Notices of Intent to seek the death penalty. Aggravating factors are neither offenses nor elements of substantive offenses that must be alleged by indictment, so Rule 7 does not govern the nature or specificity of notice required under 3593(a). The FDPA and the Constitution give defendant the right to advance notice of the aggravating factors the government seeks to prove at sentencing but do not require advance notice of the specific evidence the government will use to prove those factors. *United States v. Mills*, 2019 WL 1915762, 16-20460, DE 899, PgID 8516 (E.D. Mich., 2019).

Defendant asks this court to rely on its inherent authority to order more detailed discovery than the rules direct with respect to aggravating factors. *See, e.g., United States v. Wilson*, 493 F. Supp. 2d 364, 377 (E.D.N.Y. 2006) (citing *United States v. Llera Plaza*, 179 F. Supp. 2d 464,

471 (E.D. Pa. 2001) ("In evaluating whether due process is satisfied, the Death Penalty Notice must be considered in conjunction with the offenses charged in the indictment, which can provide the requisite specificity to an otherwise insufficient notice.")). On the other hand, several Circuits have held that the government satisfies its constitutional and statutory obligations by informing the defendant of what aggravating factors it intends to prove at trial but is not further obligated to outline what specific evidence it plans to use to prove those factors. *See, e.g., United States v. LeCroy*, 441 F.3d 914, 930 (11th Cir. 2006); *United States v. Higgs*, 353 F.3d 281, 325 (4th Cir. 2003); *United States v. Lee*, 274 F.3d 485, 495 (8th Cir. 2001).

In this case, defendant Arnold argues generally that the notice given by the government as to the aggravating factors of substantial planning and premeditation and lack of remorse is too broad, such that he is entitled to additional information to allow him to adequately prepare a defense. As explained below, the court finds that the government has provided Arnold with adequate notice of these two statutory aggravating factors to adequately prepare a defense.

The aggravating factor of substantial planning and premeditation is specific to the murder of D.R.-1 on May 8, 2015, as alleged in Counts 16

and 17. The Sixth Superseding Indictment charges Arnold and co-defendants Arlandis Shy, Matleah Scott and Keithon Porter with the May 8, 2015 murder of D.R.-1. The government has provided discovery pertaining to the murder including police reports, witness statements, the medical examiner report and ballistic evidence. The government also provided the forensic downloads of Arnold's phones, including text messages relating to the planning and execution of the murder. The text messages also show Arnold's anger and mindset to seek out rival gang members. In addition, Arnold has access to sworn testimony regarding the murder of D.R.-1 on May 8, 2015. There is law enforcement and expert testimony from the two previous trials of Arnold's co-defendants. In addition, two eyewitness victims, Jessie Ritchie and Marquis Wicker, testified in the first trial, and Ritchie and Darrio Roberts testified in the second trial. Matleah Scott testified in both trials as to the text conversations she had with Arnold. Scott testified Arnold was angry with rival gang members and sought revenge. She described how Arnold asked her on the morning of the murder to look for information on the rivals and how she passed along information to him that evening.

There is also discovery and trial testimony relating to the lack of remorse aggravating factor. The government has turned over text

messages Arnold sent to others regarding his mindset after the murder, as well as videos Arnold made of himself rapping about violence as he shows a gun.  At the previous trials, Derrick Kennedy testified that Arnold and others would go hunting for rival gang members in retaliation for assaults on SMB members and how after the murder of D.R.-1, Arnold was upset that Keithon Porter was getting too much credit for the murder.

Finally, the government responds to defendant's question about the contemporaneous conviction aggravating factor by confirming that convictions, if any, of the murder of D.P. on July 14, 2014 and of D.R.-1 on May 8, 2015, would be used as an aggravating factor supporting a death sentence with respect to each victim.  The government clarified to defendant's satisfaction that it will ask jurors to weigh a contemporaneous conviction of one murder in determining punishment for the commission of the other murder.

III.    Conclusion

For the reasons stated above, defendant's motion to dismiss is granted without prejudice as to Counts 25, 26 and 27, and denied as to Counts 5 and 17.  As it relates to Count 32, the parties are instructed to keep the court informed of legal developments on the issue of whether RICO conspiracy with special sentencing factors constitutes a crime of

violence under § 924(c)'s elements clause.  Defendant's motion for a bill of particulars is denied.

So ordered.

Dated:  November 7, 2019

             s/George Caram Steeh
             GEORGE CARAM STEEH
             UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 7, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk